## TOWNSEND v. COLORADO FUEL & IRON CO.

(Supreme Court, Appellate Division, First Department. April 9, 1897.)

GUARANTY—WHO MAY SUE ON.

The holder of mortgage bonds, in order to facilitate the negotiation thereof, agreed with a trust company to guaranty payment of principal and interest of the bonds according to their terms, and to pay all taxes and other charges on the mortgaged property; that, in case the holders of one-fifth of the bonds should become dissatisfied with the security, the trust company should have the mortgaged property appraised, and, if it should be found to have fallen below a certain value, the guarantor was to pay the interest on the bonds, "such interest being then payable to" the trust company. The contract also provided that the guarantor should pay to the trust company, on default of the obligor, the principal and interest of any of the bonds, and that the trustee might enforce payment thereof on default of the obligor; "but nothing herein contained shall be held to deprive the owners of any of said bonds or coupons of direct or separate remedy against" the guarantor. Accordingly there was indorsed on each bond a guaranty of payment of the principal and interest as specified in the bond and coupons, and a guaranty of payment of all taxes and other

charges on the property covered by the mortgage securing the bonds, on the terms of the agreement with the trust company. *Held*, that such agreement did not restrict the right of action to the trust company, but the holder of any of the bonds could sue on the guaranty.

Appeal from special term, New York county.

Action by Oliver C. Townsend against the Colorado Fuel & Iron Company on a guaranty of bonds. From an interlocutory judgment overruling a demurrer to the amended complaint, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and WILLIAMS, O'BRIEN, INGRAHAM, and PARKER, JJ.

B. S. Harmon, for appellant.

G. Richards, for respondent.

PARKER, J. The Colorado Coal & Iron Development Company issued 1,000 bonds, with coupons attached, July 1, 1887, the bonds being made payable at its New York agency 20 years after date. Subsequently this defendant became the holder and owner thereof for value, and while in the possession, as such owner, it entered into an agreement with the Central Trust Company of New York, by which it agreed, among other things, to guaranty the payment of the principal and interest of such bonds, as specified in the bonds and in the coupons thereof, and to indorse on each of said bonds a guaranty in form following:

"For value received, the Colorado Coal and Iron Company guaranties the payment of the principal and interest of the within bond, as specified in the bond and in the coupons thereof, and, on the terms of an agreement with the Central Trust Company of New York, dated December 5th, 1889, guaranties the payment of all taxes, assessments, and other liabilities and governmental charges on the property covered by the mortgage described in said bond, and the compensation and charges of the trustee of said mortgage."

In pursuance of such agreement, it made an indorsement upon each of the bonds in the words of its promise. The bonds thus indorsed were subsequently disposed of, and the plaintiff, as the owner of some portion thereof, brings this action against the defendant on such guaranty to recover on 678 of said coupons.

The defendant demurred on two grounds: First, that the court had not jurisdiction of the subject of the action; second, that the complaint did not state facts sufficient to constitute a cause of action. The defendant, on this appeal, does not press the first ground. The second one is urged, the defendant claiming that, by reason of the agreement between it and the Central Trust Company of New York, that company, as trustee, has a cause of action against the defendant on its guaranty, but the individual owners have not. It is difficult to treat defendant's contention seriously, in view of this guaranty of payment of principal and interest indorsed on each bond. The excuse for defendant's contention is sought to be founded on the fifth paragraph of the agreement, which reads as follows:

"The coal and iron company further agrees that if, at any time, the holders of not less than one-fifth in amount of said bonds then outstanding shall become dissatisfied with the security of the principal thereof, they may, in January of any year, in writing, request and thereby require the trustee to ap-

point a competent person or committee to appraise the realty and assets of said development company. And, if such person or committee shall report that such security had become less than one hundred and forty (140) per cent. of the par of said bonds then outstanding, the coal and iron company agrees thereafter to pay all taxes, assessments, and other charges and expenses and interest of said development company, such interest being then payable to the trustee, allowing the income of said development company to be applied to the redemption of bonds, as provided in its mortgage to secure the same, until such time as the security of the principal of said bonds shall, in the judgment of a like person or committee, the appointment of which by the trustee the coal and iron company shall in January of any year have the right to require, equal one hundred and forty (140) per cent. of the par of the bonds then outstanding."

—The words in such paragraph to which the defendant attaches importance being, "Such interest being payable to the trustee."

Action has been taken under the fifth paragraph by holders of not less than one-fifth in amount of such bonds, resulting in an appraisal by which it is found that the security of the principal of said bonds had become less than 140 per cent. of the par of the bonds outstanding; and defendant urges that the legal effect of such action has been to deprive the holders of the bonds and coupons of the right of action which it concedes they had down to the time when such action was begun. If it should be conceded that the parties to the agreement intended that the effect of taking action under the fifth paragraph should be to take away the right of the individual owner to enforce the guaranty indorsed on the bond, then the court would be called on to consider whether such an attempt could have successful legal result. But an examination of the entire agreement makes it clear that such was not the purpose of the fifth paragraph. The first and fourth paragraphs of the agreement, inclusive, guaranty the payment by this defendant of every tax, assessment, and governmental charge on the lands covered by the mortgage; payment of the compensation and charges of the trustee; payment of the principal and interest of the bonds, as specified in said bonds and coupons thereof, and the form of the guaranty to be indorsed on each bond by the defendant. As a further assurance to those whom it would persuade to invest in the bonds, the fifth paragraph, which we have quoted in full, was incorporated into the agreement; and then follows the sixth paragraph, in which the defendant promised that, on default of the development company, it would pay any of the bonds when due, and the coupons thereof, to the trustee; and it was also provided therein that "the trustee may enforce payment thereof on behalf of any of the holders of said bonds or coupons; that nothing herein contained shall be held to deprive holders of any of said bonds or coupons of a direct or separate remedy against the Colorado Coal & Iron Company. upon its guaranty of the principal and interest thereof." It seems to be clear, therefore, that the instrument was not intended to deprive the owners of the bonds upon the happening of any event of the right which usually belongs to the owners and holders of such security to bring suits for their enforcement.

The judgment should be affirmed, with costs, and with leave to the defendant to answer over on payment of costs in this court and in the court below. All concur.